Terry Wayne TAYLOR, Appellant,

v.

STATE of Oklahoma, Appellee.

Nos. F–91–502, M–91–278.

Court of Criminal Appeals of Oklahoma.

Sept. 15, 1994.

G. Thorne Stallings, Blanchard, for appellant, at trial.

Bill Holmes, Asst. Dist. Atty., Purcell, for the State, at trial.

Cindy G. Brown, Asst. Appellate Indigent Defender, Norman, for appellant, on appeal.

Susan Brimer Loving, Atty. Gen., Diane L. Slayton, Asst. Atty. Gen., Oklahoma City, for appellant, on appeal.

## OPINION

LANE, Judge:

Appellant, Terry Wayne Taylor, was convicted of two felony counts of Assault and Battery with a Dangerous Weapon and the misdemeanor offense of Violation of a Victim's Protective Order [1], in the District Court of McClain County, Case Numbers CRF–90–119 and CRM–90–200, following a jury trial before the Honorable Kenneth Love. Following its return of a guilty verdict, the jury recommended that Appellant be sentenced to serve a term of ten years incarceration for each felony count and a term of one year in the county jail with 117 days suspended for the misdemeanor.

Appellant has challenged his conviction raising seven allegations of error including various violations of his right against double jeopardy, that the State presented insufficient proof of his sanity, that improper comments were made by the prosecutor, that the trial court erred when it failed to give an instruction explaining the consequences of a not guilty by reason of insanity verdict, that instructions of the lesser included offense of simple assault should have been given and that the State failed to disclose exculpatory evidence. We do not find any error which requires reversal or modification of the judgment or sentence.

Appellant's wife, Cindy Taylor, in conjunction with divorce proceedings, obtained a protective order against Appellant on February 15, 1990. The terms of the Order prohibited Appellant from any contact with his wife or children.

On April 2, 1990, Appellant saw his wife on a highway near Norman. When he saw his wife's car, Appellant turned and chased her at speeds exceeding 100 mph. When he caught up with her, Appellant rammed her car with his a number of times, finally running her off an embankment, ruining a tire.

After the cars came to a halt, Appellant pulled Cindy out of the car through a broken window. He drove away with her, leaving their four young children alone in Cindy's car. He told Cindy that he was taking her to be prayed for and to have the demons cast out of her.

At trial, Appellant did not deny the acts for which he was on trial. Instead he relied on an insanity defense and sought to show that his obsession with demons demonstrated that he suffered from a paranoid schizophrenic disorder.

In his first allegation of error, Appellant claims that the evidence was insufficient to show the essential element of intent to injure with respect to the assault crimes. As the State points out, intent for this crime can

1. This conviction was originally the subject of a separate appeal, M–91–278, and placed on the fasttrack docket. Following oral arguments, the case was consolidated with the instant appeal for disposition.

be demonstrated through direct or circumstantial evidence. *Lewis v. State,* 681 P.2d 772 (Okl.Cr.1984). The evidence in this case proves that Appellant rammed his wife's car several times while driving very fast. He forced her off the road. She stopped only because her tire was flat. Appellant hit the car over twenty times without regard for the safety of the passengers. These facts together with the fact Appellant did not stop after severe damage was inflicted on the car, are sufficient to prove intent.

In conjunction with his allegations concerning his lack of intent to injure, Appellant claims that the trial court should have instructed the jury, *sua sponte,* on the lesser included crime of simple assault and battery.

■■ While a car is not an inherently dangerous weapon, Appellant used his car as a dangerous weapon in assaulting and battering his wife. *See State v. Hollis,* 273 P.2d 459 (Okl.Cr.1954); *Beck v. State,* 73 Okl.Cr. 229, 119 P.2d 865 (1942). Instruction on lesser offenses is only required when there is evidence to support the finding of the offense; *Bennet v. State,* 743 P.2d 1096 (Okl. Cr.1987). The decision to instruct on other offenses is within the discretion of the trial court and we will not intervene absent an abuse of discretion. *Rawlings v. State,* 740 P.2d 153 (Okl.Cr.1987). In this case, there was no evidence to support the giving of the lesser charge, thus, there is no error.

■■ At trial, Appellant relied on the defense of insanity. On appeal he claims that the evidence presented by the State was insufficient to prove that he was sane beyond a reasonable doubt and that the prosecutor made improper comments with respect to the burden of proof on the issue. This Court has previously held "the initial burden is on the defendant to establish a reasonable doubt as to his sanity. If the defendant establishes a reasonable doubt of his sanity, the presumption of sanity vanishes and it is incumbent upon the State to prove that the defendant could distinguish between right from wrong at the time of the offense." *Clark v. State,* 718 P.2d 375 (Okl.Cr.1986). Where the evidence is conflicting, the issue presents a question of fact for the jury, and where there is any evidence tending to support the jury's

finding, this Court will not reweigh that issue.

The facts of this case are similar to those found in *Clark.* In that case, as here, the interviews concerning sanity were undertaken several months after the fact. We held that in such a situation the weight and credibility to be given to the testimony is a very important jury issue. In *Manous v. State,* 745 P.2d 742 (Okl.Cr.1987), the testimony by the State's expert witness was strikingly similar to the testimony in this case. As rebuttal to the defense expert's testimony, the witness testified that mental illness does not always affect a person's ability to distinguish right from wrong. In addition to the expert testimony, evidence from the arresting officers established that the defendant took responsibility for his criminal acts and seemed to have no trouble understanding what was occurring. The Court held that the evidence was sufficient to sustain the jury's verdict.

■■ Appellant stipulated the events charged occurred, but presented much testimony on the issue of his mental condition at the time of the offenses. Appellant's expert medical testified that although there was no way to be absolutely certain, he believed that on the day of the crimes, Appellant did not know right from wrong. The State presented medical testimony that regardless of any mental illness Appellant may have been suffering, his ability to determine right from wrong was adequate. Lay witnesses testified that although Appellant appeared to be somewhat obsessed with demons and demon possession, he did not appear to be mentally ill in the days or months preceding the crimes. At the time of the arrest, Appellant acknowledged his crimes and told one of the arresting officers that he was not going to hurt Mrs. Taylor.

While the evidence is clearly conflicting on the issue of sanity, the jury rejected the defense after hearing all the evidence. Based on the authority cited above, this Court will not pass on the credibility of the witnesses or interfere with the jury's verdict if it is supported by the record.

■ Appellant next objects to the following comment made during the prosecutor's closing argument:

There is no doubt, that if you find beyond a reasonable doubt that Terry Wayne Taylor, when he committed the acts that he's alleged of doing, was so deluded, or so mentally ill, that he did not even know right from wrong, that he did not even understand the nature and consequences of his acts, if you can say that beyond a reasonable doubt, then certainly the State understands the position you are in. But I ask you to look at the evidence, and I ask you to look to yourself and say, would justice be served today, after I heard the last couple of days the evidence I did, if I were to say after deliberation and consideration, this man is not guilty.

In light of the fact that there was no objection to this comment when it occurred, it is waived absent fundamental error. As it does not appear to be a blatant attempt to misstate the burden of proof, which was adequately instructed on at trial, there is no fundamental error.

■ The final allegation with respect to Appellant's insanity defense concerns Appellant's claim that the trial court erred by not giving an instruction as to the consequences of a verdict of not guilty by reason of insanity. As pointed out by the State, Appellant did not request any instruction on this issue. However, beyond that, this Court has held that the refusal (or failure) to give such an instruction is not error. *See Boutwell v. State*, 659 P.2d 322 (Okl.Cr.1983); *Thomsen v. State*, 582 P.2d 829 (Okl.Cr.1978).

Appellant's double jeopardy argument presents an issue of first impression for this Court. He asserts the Double Jeopardy Clause of the federal constitution prohibits punishment for conduct which lead to the violation of a Victim's Protective Order (VPO) as both the violation of the VPO and as a crime separate from the VPO.

■ The parties offer little guidance, for they cite related double jeopardy cases with no application herein. The acts which support the conviction for violation of the VPO are unquestionably the same acts which sustained the conviction for the Assault and Battery with a Dangerous Weapon. The Supreme Court has given the states guidance in the resolution of this issue. If the legislative intent is to punish these acts both as violation of a VPO and a separate distinctive crime, double punishment does not offend the Double Jeopardy Clause of the federal constitution *as long as they are prosecuted in the same case. Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985).

■ Legislative intent to punish violation of a VPO in its own right is set forth clearly in 22 O.S.Supp.1988, § 60.6:

A. Except as otherwise provided by this section any person who has been served with an ex parte or final protective order and is in violation of such protective order, upon conviction, shall be guilty of a misdemeanor and shall be punished by a fine of not more than One Thousand Dollars ($1,000.00) or by a term or imprisonment in the county jail of not more than one (1) year, or both ...

C.3. The provisions of this subsection shall not affect the applicability of Sections 644, 645, 647 and 652 of Title 21 of the Oklahoma Statutes.

Sections 644, 645, 647, and 652 of Title 21 of the Oklahoma Statutes define the crimes of assault and battery, assault and battery with a dangerous weapon, aggravated assault and battery, and shooting with intent to kill. Applying the rule of construction under *Garrett*, we find such prosecution does not violate the Double Jeopardy Clause of the federal constitution. *See Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984); *Missouri v. Hunter*, 459 U.S. 359, 368–369, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); C.F. *Commonwealth v. Allen*, 506 Pa. 500, 486 A.2d 363 (1984).[2]

■ The final issue for our consideration concerns only the misdemeanor conviction. Appellant claims that the State failed to disclose exculpatory evidence despite his timely

---

2. The results would not be the same if the charges were presented in successive prosecutions. *See, United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

pre-trial request. The evidence in question consisted of a number of cards, letters and photos which Appellant sent to his wife in his effort to convince her to reconcile. The exhibits were offered by the State at trial presumably to prove the point that Appellant was acting out of obsessive love rather than insanity. There is nothing in the exhibits which is exculpatory. In any event, no effort was made to cross-examine the witness with respect to any of these items, reenforcing the idea that they were only marginally relevant and not in any way exculpatory.

After review of the errors alleged by Appellant, we are unable to conclude that any error has occurred which requires either reversal or modification of Appellant's sentence. Accordingly, the judgment and sentence is **AFFIRMED.**

LUMPKIN, P.J., and JOHNSON, V.P.J., concur.

CHAPEL, J., concurs in part/dissents in part.

STRUBHAR, J., concurs in the concurring in part/dissenting in part opinion of CHAPEL, J.

CHAPEL, Judge, concurring in part/dissenting in part:

I concur in affirming the judgment and sentence on the Assault and Battery with a Dangerous Weapon counts. However, I would reverse the misdemeanor conviction for violation of a Victim's Protective Order as it violates the prohibition against double jeopardy found in Article II, Section 21 of the Oklahoma Constitution.

The majority treats the violation of a Victim's Protective Order as contempt and concludes that jeopardy is not triggered because Taylor has been convicted of two separate crimes with distinctly different elements (i.e. contempt and assault and battery). I agree that violating a Victim's Protective Order is contemptuous, but since Taylor's contemptuous conduct is precisely the same conduct which led to his assault and battery convictions I believe jeopardy is triggered.

The U.S. Supreme Court has recently struggled with this issue in *U.S. v. Dixon,* — U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). There, the Supreme Court, in a confusing effort to clear up the federal jurisprudence moves away from the "same conduct" test for analyzing the double jeopardy issue and reverts back to the "same elements" test established in *Blockburger v. U.S.,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The majority of this Court also relies on *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), in analyzing the jeopardy issues before us today. I find the *Garrett/Blockburger* analysis to be simplistic, too narrow and of little help in analyzing these issues under the Oklahoma Constitution. A test which involves the elements of a crime renders the jeopardy clause virtually meaningless because the Legislature can always add elements. Therefore, notwithstanding *Blockburger* and other decisions of this court and federal courts to the contrary, I would hold that prosecutions for contempt and another completed crime simultaneously or in successive trials are barred by Art. II, § 21 of the Oklahoma Constitution if the same conduct is used to prove both. In my judgment, the analysis should center on the conduct. If the same conduct is being punished through multiple charges or successive trials, I would hold the jeopardy clause is triggered. I am authorized to state Judge Strubhar joins in this opinion.